IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

AARON H. KLEIN                                                                     PLAINTIFF

v.                        CASE NO.       11-2218

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.     **Procedural Background:**

The plaintiff filed his applications for DIB and SSI on June 25, 2010 (T. 128), alleging an onset date of September 28, 1981 (T. 147), due to plaintiff's being born without a thyroid and schizophrenia (T. 151). Plaintiff's alleged onset was the date of his birth. Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on June 3, 2011. Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 29 years of age and possessed a 9th grade education (T. 151). The Plaintiff has no past relevant work ("PRW") experience (T.

19 ).

On August 17, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's hypothyroidism and generalized anxiety disorder did not meet or equal any Appendix 1 listing. T. 13. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform light work with additional restrictions. T. 15. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the representative occupations of Machine Tenders and Poultry Worker. T. 20.

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id*. As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**:

The ALJ found that the Plaintiff had severe impairments of hypothyroidism and generalized anxiety disorder (T. 12) but that he did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment (T. 13).  The Plaintiff does not contest this finding.

The ALJ then determined that "[T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant can occasionally lift and carry 20 pounds and frequently 10 pounds; the claimant can stand and walk for about 6 hours and sit for about 6 hours out of an 8 hour workday; the claimant can do work where interpersonal contact is incidental to the work performed, where the complexity of tasks is

learned and performed by rote, with few variables, and where little judgment required; and where the supervision is simple, direct, and concrete ." T. 15.

The Plaintiff contends that the ALJ erred concerning his determination of the Plaintiff Residual Functional Capacity. (ECF No. 10, p. 8). It is contended that the ALJ failed to take into consideration the fatigue experienced from the hypothyroidism; the need to take unscheduled breaks and missed work; as well as the side effects from medication. As set forth herein, all of the aforementioned would have negated work activity pursuant to the VE testimony. (Id., p. 9).

**A. Hypothyroidism**

The Plaintiff testified that he was born without a thyroid the and the fact that I have no thyroid drains me. I have no energy. T. 49.  The Plaintiff also made this claim on his initial application for social security benefits. T. 147.  This claim that he was born without a thyroid was untrue.  The Plaintiff was treated by Dr. Robinson, Department of Endocrinology, Cooper Clinic since 1996 and the fist medical record is dated 1998 when he was seen for Hypo-thyroidsm[1]. Dr. Robinson noted that the Thyroid was normal to palpation and that Plaintiff was doing well on Synthroid[2] 0.15mg per day. T. 197. In 2001 Dr. Robinson noted that his Thyroid was normal to palpations and that he continued to do well on his medication.  Dr. Robinson also noted that he was asked to send a letter to his lawyer because he "hopes to get disability".  Dr. Robinson noted that his TSH was okay and he would follow up every two years. (T. 196). Dr. Robinson noted that he was still on Synthroid 0.15 mg and doing well and the Thyroid was small,

---

[1] Hypothyroidism is a condition in which the thyroid gland does not make enough thyroid hormone.  See www.drugs.com.

[2] Synthroid (levothyroxine) is a replacement for a hormone that is normally produced by your thyroid gland to regulate the body's energy and metabolism.  See www.drugs.com.

soft, and normal to palpation. (T. 195).   In August 2003 Dr. Robinson noted that the Plaintiff was working 8-10 hours per day and that "he is tired at the end of the day, but I think it is appropriate for his workload". (T. 193). It appears that at some point his medication was changed to Levoxyl.[3]  In December 2004 Dr. Robinson noted that the Plaintiff was still doing masonry work and that his "energy level is good" (T. 192).  At this point the Plaintiff was euthyroid.[4]

Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin*. 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

The court also notes that Dr. Robinson is a specialist in the field of Endocrinology. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart*  393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.

The Plaintiff was seen by a Family Practitioner, Dr. Kuykendall on February 8, 2006 for a "check up". It was noted that he smokes and that his occupation was masonry. The Plaintiff indicated on his Disability Report that he had only done masonry work during May 2005, but it appears that he reported to his treating physicians that he was engaged in this work from 2003

---

[3] Levoxyl (levothyroxine) is a replacement for a hormone that is normally produced by your thyroid gland to regulate the body's energy and metabolism. Levoxyl is given when the thyroid does not produce enough of this hormone on its own. Levoxyl treats hypothyroidism (low thyroid hormone).  See www.drugs.com

[4] Having the right amount of thyroxin stimulation.  See http://medical-dictionary.thefreedictionary.com/euthyroid.

through 2006. *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005) (holding that working after the onset of an impairment is some evidence of an ability to work). In *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir.2001), the court stated "[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."

Dr. Kuykendall's assessment in February 2006 was hypothyroidism and he continued his medication of Levoxyl 0.137, 1 po qd. (T. 205). In March 2007 the Plaintiff saw Dr. Kuykendall again complaining of "anxiety attack" because of a neighbor's death. He was assessed with Hypothyroidism and panic attacks and told to avoid caffeine, alcohol, and tobacco and was prescribed Celexa[5] 20 mg[6]. The Plaintiff did not see Dr. Kuykendall again until June 2008 and only to check on his Thyroid. A TSH was run (T. 207) at that time which was normal (T. 208). When the Plaintiff was admitted to UAMS on October 6, 2009 his TSH was still normal. (T. 256).

The court finds that the ALJ properly considered the Plaintiff's hypothyroid condition, discounted the Plaintiff's subjective complaints, and made proper allocation in the RFC assessment.

**B.  Depressive Disorder, NEC**

The Plaintiff filed his application for disability benefits (T. 151) and testified at the hearing before the ALJ that he had been diagnosed with Schizophrenia (T. 54). The only diagnosis of Schizophrenia is by the Plaintiff treating physician Dr. Kuykendall. Dr. Kuykendall

---

[5]Celexa (citalopram) is an antidepressant in a group of drugs called selective serotonin reuptake inhibitors (SSRIs). Celexa is used to treat depression. See www.drugs.com.

[6]Celexa should be administered at an initial dose of 20 mg once daily, generally with an increase to a dose of 40 mg/day. See www.drugs.com.

is a Family Practice physician who saw the Plaintiff on November 4, 2009. The doctor's notes state "the patient was in Little Rock 1 week in October for Schizophrenia". The doctor's Assessment then is for Hypothyroid and Schizophrenia (T. 202).

A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). The court will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 (internal quotations omitted).

When the record is evaluated as a whole the treating physician's conclusory diagnosis is completely unsupported by the medical record. A review of the medical records from the University of Arkansas for Medical Science (UAMS) shows that the Plaintiff was never diagnosed with Schizophrenia but was diagnosed initially with Methamphetamine Dependence (T. 220, 227) and the Discharge Summary states that the Problems Addressed were: Suicidal Ideation, Amphetamine Depend-Unspec; Insomnia Unspecified; and Depressive Disorder NEC. (T. 256). UAMS had the Plaintiff in their Psychiatric Research Institute and under observation and treatment from October 6, 2009 to October 12, 2009. There treatment and findings were documented in detail. (T. 212-257).

Dr. Kuykendall's diagnosis of Schizophrenia for the first time appears in his medical

record on November 4, 2009. There is no explanation other than that the Plaintiff was admitted to UAMS but it is clear that he cannot have examined the records from UAMS. His records offer no explanation for his Assessment and is subject to be discounted. See *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ properly discounted the treating physician's opinion that consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration); *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) (recognizing that "[w]e have upheld an ALJ's decision to discount a treating physician's [medical source statement] where the limitations listed on the form stand alone, and were never mentioned in [the physician's] numerous records o[f] treatment nor supported by any objective testing or reasoning" (first and second alterations added) (internal quotation marks and citation omitted)).

The Plaintiff was seen by Steve Shry, Ph. D., a Clinical Psychologist on August 24, 2010. The Plaintiff again told Dr. Shry that he was diagnosed with Schizophrenia but Dr. Shry noted in his report that this was not true and that he was diagnosed with Depressive Disorder, NOS and Amphetamine Dependance (T. 266). Dr. Shry diagnosed the Plaintiff with Generalized Anxiety Disorder, with panic and rated his GAF at 70-80[7] (T. 268). Dr. Shry noted that the Plaintiff had no impairments in his ability; to do all adaptive functioning tasks[8]; to communicate and interact in a socially adequate manner; to communicate; comprehending and/or carrying out simple and complex tasks; sustain persistence; or to complete tasks in an acceptable time frame. (Id.). An

---

[7]A GAF of 71-80 indicates "If symptoms are present, they are transient and expectable reactions to psychosocial stressors; no more than slight impairment in social, occupational, or school functioning. A GAF of 61-70 indicates "Some mild symptoms or some difficulty in social, occupational, or school functioning. DSM-IV-TR at 34.

[8]An Activities of Daily Living form and Pain Assessment form was sent to the Plaintiff but never returned to the Commission. (T. 274).

evaluation was also requested from Dr. Jerry Henderson, Ph. D., on September 23, 2010 who found that "evidence of a severe mental impairments is not documented." (T. 273). All of the medical evidence was reviewed again by Dr. Winston Brown, M.D. on January 24, 2011 and affirmed.

On June 16, 2010 Dr. Kuykendall offered the opinion that the Plaintiff "is completely disabled." (T. 201). Because a statement that someone is disabled is an administrative finding, not a medical opinion, it is never entitled to controlling weight because this is an issue that is reversed to the Commissioner. Social Security Ruling (SSR) 96-5p.

The court finds that the ALJ properly considered the Plaintiff's condition of Hypothyroidism and Depressive Disorder and that he properly discounted the opinion of Dr. Kuykendall, and the Plaintiff's subjective complaints. The court further finds that the hypothetical question posed to the VE was proper. The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are substantially supported by the record as a whole." Id. (citing *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993)); see also *Morse v. Shalala*, 32 F.3d 1228, 1230 (8th Cir.1994).

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this October 23, 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

-10-